J-S04015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN IVEY | : | |
| | : | |
| Appellant | : | No. 184 EDA 2021 |

Appeal from the Judgment of Sentence Entered December 3, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0626011-1981

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 9, 2022**

Appellant, Steven Ivey, appeals from the judgment of sentence of 30 years' to life imprisonment. Appellant, who was 17 years old when he was convicted of second-degree murder in 1981, was originally sentenced to life imprisonment, without the possibility of parole ("LWOP"). In 2018, that sentence was vacated pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012) (holding that the Eighth Amendment forbids a sentencing scheme that mandates LWOP for juvenile offenders), and **Montgomery v. Louisiana**, 577 U.S. 190 (2016) (holding that **Miller's** prohibition on mandatory LWOP for juvenile offenders constitutes a new substantive rule that applies retroactively to cases on collateral review). The court resentenced Appellant to the above-stated term of incarceration on December 3, 2020. On appeal, Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

contends that his sentence is illegal, and that the court abused its discretion in fashioning his new term of incarceration. After careful review, we affirm.

The court summarized the facts and procedural history of Appellant's case, as follows:

> On January 2, 1981, Appellant…, now known as Muti Ajamu-Osagboro, entered the American Grocery Store[,] located at 12th and Mt. Vernon Streets in Philadelphia[,] with four co-conspirators[] with the intent to rob it. One of Appellant's co-conspirators, Richard Phelps[,] brought a gun which he pulled on the store owner, Sook Ja Yu, and demanded money. The owner reached toward the gun, but it fired[,] striking her once in the chest. She died as a result of this injury. Appellant was [17] years old at the time of this incident.
>
> On November 4, 1981, following a bench trial[,] Appellant was convicted of second-degree murder and related charges. On March 2, 1982, Appellant was sentenced to an aggregate term of life imprisonment[, without the possibility of parole (LWOP)]. On April 19, 1984, the Superior Court affirmed Appellant's judgment of sentence. Appellant did not seek *allocatur* with the Pennsylvania Supreme Court. On January 8, 1997, Appellant filed his first[,] *pro se* Post[]Conviction Relief Act ("PCRA") petition and[,] following appointment of counsel[,] an amended petition was filed on October 29, 1997. On March 31, 1998, the PCRA court denied the petition for lack of merit. Appellant did not appeal. Subsequently, Appellant filed two unsuccessful PCRA petitions in 2000 and 2003.
>
> On July 20, 2010, Appellant filed a *pro se* PCRA petition alleging he was entitled to relief pursuant [to] **Graham v. Florida**, 560 U.S. 48 (2010), because he was under [18] at the time of the offense. Appellant filed subsequent[,] supplemental *pro se* petitions when the United States Supreme Court decided **Miller** … and **Montgomery**…, alleging again [that] he was entitled to relief because he was a juvenile at the time of the offense.
>
> ***
>
> On April 27, 2018, the PCRA court granted Appellant's PCRA petition … as it related to his **Miller/Montgomery** claims…. On

March 30, 2020, the Superior Court affirmed the PCRA court's decision. [*See Commonwealth v. Ivey*, 2020 WL 1515893 (Pa. Super. 2020) (unpublished memorandum).] Again, Appellant did not seek *allocatur* with our Supreme Court.

On December 3, 2020, following [the] grant of Appellant's PCRA petition relating to his *Miller/Montgomery* claim, Appellant was resentenced to a term of 30 years['] to life[ imprisonment,] with [the] possibility of parole[,] on the [second-degree] murder … conviction[,] with credit for time served[.] … [N]o further penalty was imposed on the remaining convictions. On December 29, 2020, a [n]otice of [a]ppeal to the Superior Court was filed on behalf of … Appellant by his counsel….

***

On July 13, 2021, this court issued an [o]rder pursuant [to] Pa.R.A.P. 1925(b), for Appellant to file a concise [s]tatement of [m]atters [c]omplained of on [a]ppeal. On August 3, 2021, Appellant filed a timely [s]tatement of [m]atters [c]omplained of on [a]ppeal.

Trial Court Opinion ("TCO"), 8/12/21, at 1-3 (footnotes omitted). The trial court filed its Rule 1925(a) opinion on August 12, 2021.

Herein, Appellant states one issue for our review: "Did the sentencing court abuse its discretion when it entered a sentence of 30 years to life?" Appellant's Brief at 4. Preliminarily, we observe that although Appellant presents only one issue in the "Statement of the Questions Involved" section of his brief, he divides his "Argument" section into two separate claims. First, Appellant asserts that "[t]here is no controlling sentencing statute applicable to [his] second-degree murder conviction." *Id.* at 10. Second, he avers that "[t]he sentencing court's sentence was manifestly excessive, unreasonable, and illegal." *Id.* at 12. Although Appellant did not properly set forth his two issues in his "Statement of the Questions Involved," we will address his

arguments because, as discussed *infra*, they constitute non-waivable challenges to the legality of his sentence.

In his first claim, Appellant contends that there is no statutory authority for his sentence of 30 years' to life imprisonment. According to Appellant, ***Miller*** wholly invalidated 18 Pa.C.S. § 1102(b), the sentencing statute under which his original term of incarceration was imposed. He recognizes that "in response to ***Miller***, the Pennsylvania legislature enacted a new law governing sentencing for juveniles convicted of murder." Appellant's Brief at 10 (citing 18 Pa.C.S. § 1102.1). He stresses, however, that this "sentencing framework only applies to a person who has been convicted after June 24, 2012." ***Id.*** (internal quotation marks and citation omitted); ***see also*** 18 Pa.C.S. § 1102.1(c) (setting forth the sentencing requirements for "[a] person who has been convicted after June 24, 2012, of a murder of the second degree"). Consequently, Appellant argues that "there is no statutory [or] constitutional basis for [his] December 3, 2020 sentence" of 30 years' to life incarceration. Appellant's Brief at 10.

Appellant's claim implicates the legality of his sentence. ***See Commonwealth v. Melvin***, 172 A.3d 14, 19 (Pa. Super. 2017). Thus, "our standard of review is *de novo* and our scope of review is plenary." ***Id.*** (citation and quotation marks omitted).

As the trial court correctly observed, we have already assessed and rejected Appellant's same argument in ***Melvin***. ***See*** TCO at 4. The court explains:

In **Melvin**, [Melvin] and his co-conspirator attempted to flee a juvenile detention facility in November of 2003 and, in the process, accidentally caused the death of the facility's night manager by suffocation. [Melvin] pled guilty to second[-]degree murder, while the remaining charges were *nolle prossed*, and [he] was sentenced to [LWOP]. [**Melvin**, 172 A.3d] at 17.

On August 19, 2016, following multiple PCRA petitions and the United States Supreme Court's decisions in **Miller** and **Montgomery**, the PCRA court vacated [the] appellant's sentence and resentenced him to a term of 30 years['] to life[,] with [the] possibility of parole. [Melvin] filed post-sentence motions[,] which were denied, and he appealed claiming his sentence was illegal. He argued "that the PCRA court had no valid statutory authority to impose a term-of-years sentence with a maximum term of life imprisonment at his resentencing" and[,] because his offense occurred prior to June 24, 2012, "the only possible legal sentence [was] on the lesser included offense of third-degree murder or the underlying felony of robbery." **Id.** at 18-19 (internal citations, brackets and quotation marks omitted).

In disposing of this issue, the [C]ourt looked through the history of the Pennsylvania Supreme Court's interpretation of **Miller**. The [C]ourt explained that our Supreme Court interpreted **Miller** to require sentencing courts to consider the appropriate age-related factors before imposing … []LWOP[] sentences on juveniles[,] while asserting that juveniles could still receive LWOP sentences. **Id.** at 19 [(]quoting **Commonwealth v. Batts**, 66 A.3d 286, [] 296 (Pa. 2013) ("**Batts I**")[)]. However, to sentence a juvenile to LWOP[,] the Commonwealth must prove, beyond a reasonable doubt "that the juvenile offender is permanently incorrigible and thus unable to be rehabilitated." **Id.** at 20 [(]quoting **Commonwealth v. Batts**, 163 A.3d 410, 459-60 (Pa. 2017) ("**Batts II**")[),] *abrogated by* **Jones v. Mississippi**, 141 S.Ct. 1307 (2021).[6]

> [6] In **Jones**…, a 2021 decision, the United States Supreme Court held that sentencing courts need not make separate findings of permanent incorrigibility before imposing a[n] LWOP sentence on a juvenile offender, [**Jones**,] 141 S.Ct. at 1319, and that sentencing courts are not required to provide on-the-record explanations with implicit findings of permanent incorrigibility, [**id.**] at 1321.

With respect to which sentencing guideline would apply to juveniles for whom the court determines LWOP sentences are inappropriate, our Supreme Court "instructed sentencing courts to look to the mandatory minimum sentences set forth in section 1102.1(a) for guidance in setting a minimum sentence for a juvenile convicted of first-degree murder prior to **Miller**." **Id.** at 20-21 [(]quoting **Batts II**, 163 A.3d at 443 n.17[)] … (internal quotation marks and bracket omitted).

The [C]ourt explained it was bound by our Supreme Court's decision in **Batts II**[] in rejecting the contention that there was: (1) no legislatively authorized sentence for juveniles convicted of first-degree murder prior to 2012; and (2) that the forty[-]year maximum penalty for third-degree murder was the only legal alternative and that severance of the statute was impossible. **Id.** at 21. The Court also held that in resentencing a juvenile offender, a sentencing court was "constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment[,]" with eligibility of parole. **Id.** Therefore, in [Melvin's] case, the [C]ourt determined his thirty-years-to-life sentence was not illegal.

The [C]ourt further iterated that in response to **Miller**, the legislature passed 18 Pa.C.S. § 1102.1, which set[s] forth applicable sentences for certain homicides, including second-degree murder, committed by juveniles after June 24, 2012. The [C]ourt explained that our Supreme Court "mandated that where … the lower court determines that a juvenile LWOP sentence is inappropriate for an offender who was convicted of homicide before **Miller**, the court must, in fashioning a term-of-years-to-life sentence, consider the sentencing requirement codified at 18 Pa.C.S. § 1102.1." **Id.** at 22.

The PCRA court in [Melvin's] case was informed by [s]ection 1102.1 in imposing its sentence, which provides that the minimum sentence for second-degree murder committed by a juvenile 15 years or older shall be at least thirty-years to life[.] [T]herefore, [the Superior Court] found no reason to disturb the PCRA court's decision. **Id.**

Like Melvin, … Appellant in the instant case is not entitled to relief based on his claims. Appellant's original sentence for his second-degree murder was vacated and he was resentenced by this court to a term o[f] 30-years to life for the second-degree murder conviction. The Superior Court in **Melvin** has determined that this

sentence is not illegal, and our Supreme Court denied *allocatur* to consider it on appeal. Therefore, the sentence should be left undisturbed.

TCO at 4-6.

We agree with the trial court's interpretation and application of ***Melvin***. Appellant's insistence that "this issue is far from settled in Pennsylvania" because our "Supreme Court has not reviewed" the ***Melvin*** decision is unavailing. Our Supreme Court declined review in ***Melvin***, and "a panel of this Court cannot overrule the decision by another panel." ***Commonwealth v. Karash***, 175 A.3d 306, 307 (Pa. Super. 2017). Accordingly, we are bound by ***Melvin*** to reject Appellant's argument that no statutory authority exists for his sentence of 30 years' to life imprisonment. ***See also Commonwealth v. Derrickson***, 242 A.3d 667, 676–77 (Pa. Super. 2020), *appeal denied*, 253 A.3d 213 (Pa. 2021) (rejecting the argument that there is no statutory basis for sentencing a juvenile convicted of a second-degree murder committed prior to ***Miller***).

Appellant next contends that the court abused its discretion in resentencing him to 30 years' to life incarceration because a mandatory-maximum sentence of life imprisonment for a juvenile convicted of second-degree murder violates the Eighth Amendment's prohibition against cruel and unusual punishment. While Appellant construes this claim as a discretionary-

aspects-of-sentence issue, it actually implicates the legality of his sentence.[1]

*See Commonwealth v. Moye*, 266 A.3d 666, 673 (Pa. Super. 2021). Thus,

we reiterate that "our standard of review is *de novo* and our scope of review

is plenary." *Id.* at 673-74 (citations omitted).

Here, Appellant does not meaningfully elaborate on why he believes his

maximum sentence violates the Eighth Amendment. Instead, he only briefly

asserts that "a mandatory[-]maximum sentence of life imprisonment should

be as unconstitutional as a mandatory[-]minimum sentence of life

imprisonment[, as] … both are imposed without proportionality and without

individualized consideration in violation of the Eighth Amendment."

Appellant's Brief at 13.

Notably, the Commonwealth agrees with Appellant that it is cruel and

unusual punishment to sentence a juvenile convicted of second-degree

murder to a mandatory-maximum sentence of life imprisonment. *See*

Commonwealth's Brief at 18. However, it correctly "acknowledges that this

Court has repeatedly upheld" such sentences. *Id.* at 19 (citing *Derrickson*,

242 A.3d at 675-76; *Commonwealth v. Olds*, 192 A.3d 1188, 1191 (Pa.

Super. 2018)). Indeed, in *Olds*, "we reaffirm[ed] that trial courts *must*

---

[1] To the extent Appellant argues that the court abused its discretion in fashioning his sentence, he has waived such claims by failing to file a post-sentence motion. *See Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013) ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

sentence juveniles convicted of second-degree murder prior to June 25, 2012[,] to a maximum term of life imprisonment under section 1102(b)." *Olds*, 192 A.3d at 1198 (emphasis added). We held "that such mandatory maximums *do not* violate the Eighth Amendment's ban on cruel and unusual punishment." *Id.* (emphasis added)

Appellant makes no effort to distinguish his cursory Eighth Amendment argument from the one raised and rejected in *Olds*. He also does not discuss any legal authority issued since *Olds* that would ostensibly alter our holding therein. The only more recent case cited by Appellant is *Commonwealth v. Machicote*, 206 A.3d 1110 (Pa. 2019), from which he quotes that "one of the hallmarks of the line of United States Supreme Court cases pertaining to juvenile sentencing, is the notion that conviction for a specific crime does not warrant the same sentence in all circumstances." Appellant's Brief at 13 (quoting *Machicote*, 206 A.3d at 1119).

However, the holding of *Machicote* does not involve whether the Eighth Amendment is violated when a juvenile convicted of second-degree murder receives a term-of-years minimum sentence, and a mandatory-maximum term of life imprisonment. Instead, the *Machicote* Court held "that when a juvenile is exposed to a potential sentence of [LWOP,] the trial court must consider the *Miller* factors, on the record, prior to imposing a sentence." *Id.* Here, Appellant did not receive a sentence of LWOP and, thus, *Machicote* is not relevant to his Eighth Amendment claim. Because Appellant cites no other

legal authority that would call into question our holding in **Olds**, we conclude that his constitutional challenge is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/09/2022