J-S32003-21

2021 PA Super 225

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEAUNTAY DONTAZ MOYE | : | |
| | : | |
| Appellant | : | No. 1304 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 17, 2020
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000486-2015

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

OPINION BY LAZARUS, J.:                    **FILED: NOVEMBER 19, 2021**

This is Deauntay Dontaz Moye's third direct appeal from his judgment of sentence.  After careful review, we affirm.

This Court has previously set forth the factual and procedural background of this case as follows:

> In January of 2015, two weeks before he turned seventeen, Moye and another juvenile, Ryan Hardwick, arranged to purchase marijuana from a dealer at a designated location.  Although Moye and Hardwick expected to meet the dealer, the dealer sent his girlfriend, Stephanie Walters, [with whom Moye was acquainted], to carry out the transaction.  Walters arrived at the designated location in her vehicle, picked up Moye and Hardwick, and drove to a parking lot.  After Moye and Hardwick inspected the drugs, Moye, who was carrying a .22 revolver, shot Walters twice in the head.  Using the same gun, Hardwick then shot and killed Walter's dog, which was also in the car.  Moye and Hardwick then moved Walter's body to the back seat of her vehicle, and proceeded to drive the vehicle around the Altoona area for some time while they got high on the marijuana. Walters was still alive for approximately twenty minutes.  Ultimately, [Moye and Hardwick] dropped the vehicle off near an abandoned house, and Hardwick hid the car keys and the gun at his house. Hardwick told police

that he and Moye had been planning to rob someone for marijuana for several weeks, and that Moye had been talking about wanting to shoot someone.

*Commonwealth v. Moye*, 224 A.3d 48, 49 (Pa. Super. 2019).

On September 20, 2016, Moye entered a guilty plea to first-degree murder,[1] robbery-inflicts serious bodily injury,[2] criminal use of a communications facility,[3] firearms not to be carried without a license,[4] criminal conspiracy-possession with intent to deliver,[5] abuse of a corpse,[6] killing, maiming or poisoning domestic or zoo animals,[7] unauthorized use of automobiles or other vehicles,[8] and possession of firearm by minor.[9] On December 2, 2016, the court sentenced Moye to life imprisonment without the possibility of parole (LWOP) on the homicide count. On the remaining counts, the court sentenced Moye to various prison terms ranging from a minimum of

---

[1] 18 Pa.C.S.A. § 2501(a).

[2] 18 Pa.C.S.A. § 3701(a)(1)(i).

[3] 18 Pa.C.S.A. § 7512.

[4] 18 Pa.C.S.A. § 6106(a)(1).

[5] 18 Pa.C.S.A. § 903(a)(1); 35 P.S. § 780-113(a)(30).

[6] 18 Pa.C.S.A. § 5510.

[7] 18 Pa.C.S.A. § 5511(a)(1)(i).

[8] 18 Pa.C.S.A. § 3928(a).

[9] 18 Pa.C.S.A. § 6110.1(a).

one month to a maximum of 20 years' incarceration, all to run concurrently to the other counts. Although the sentencing court had considered the post-*Miller v. Alabama*, 567 U.S. 460 (2012),[10] statutory factors set forth in 18 Pa.C.S.A. § 1102.1(d)(7),[11] on appeal to this Court, we vacated and remanded

_____

[10] In *Miller*, the United States Supreme Court held that statutory schemes such as Pennsylvania's, which imposed mandatory LWOP for certain homicide convictions, constituted cruel and unusual punishment when applied to juvenile homicide offenders. 567 U.S. at 469. In doing so, the Court reaffirmed the principle "that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, [] they are less deserving of the most severe punishments." *Id.* (internal quotation marks and citation omitted).

[11] Pennsylvania's General Assembly responded to *Miller* by enacting a new sentencing statute for juveniles convicted of first-degree murder after June 24, 2012. 18 Pa.C.S.A. § 1102.1(a). *See* 2012 P.L 1655. Section 1102.1(a) provides than an individual convicted of first-degree murder after June 24, 2012, who was under the age of 18 but over the age of 15 at the time of the offense, "shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S.A. § 1102.1(a)(1). When determining whether to impose a sentence of LWOP on a juvenile convicted of murder, section 1102.1 requires a court to consider and make findings on the record regarding "the [a]ge-related characteristics of the defendant," including:

> (i) Age.
>
> (ii) Mental capacity.
>
> (iii) Maturity.
>
> (iv) The degree of criminal sophistication exhibited by the defendant.
>
> (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

*(Footnote Continued Next Page)*

for resentencing in light of our Supreme Court's decision in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) (*Batts II*),[12] which required additional

_____

> (vi) Probation or institutional reports.
>
> (vii) Other relevant factors.

18 Pa.C.S.A. § 1102.1(d)(7)(i-vii).

[12] *Batts II* was recently abrogated by the United States Supreme Court in *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). The *Jones* Court confirmed that *mandatory* sentences of life without the possibility for juvenile offenders violate the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution, but the Court held that sentencing schemes that allow the *discretionary* imposition of life sentences pass constitutional muster and need not require a separate factual finding of permanent incorrigibility before doing so. *Jones*, *supra* at 1311. As this Court *en banc* recently explained in *Commonwealth v. DeJesus*, 2021 PA Super 213 (filed Oct. 20, 2021):

> [*Jones*] reiterated the principle that a LWOP sentence for a juvenile homicide offender meets the requirements of the Eighth Amendment so long as the sentence is part of a sentencing scheme in which the sentencer has the discretion to impose a sentence less than LWOP. [*Jones*, *supra*] at 1311. In addition, the sentencing scheme only requires the sentencer to consider the juvenile homicide offender's "youth and attendant characteristics" to meet the requirements of the Eighth Amendment. *Id.* at 1314 (quoting *Miller*, 567 U.S. at 483). The U.S. Supreme Court also rejected the need for the sentencer to make "an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility" to be legal under the Eighth Amendment. *Id.* at 1319. . . . In *Batts II*, our Supreme Court interpreted the Eighth Amendment as [requiring] a sentencing court that imposes a LWOP sentence [to] make a finding, supported by competent evidence, of "permanent incorrigibility," a standard much higher than the requirement that the sentencing court consider a "juvenile's youth and attendant characteristics." Since "[i]t is beyond cavil that [Pennsylvania state courts are] bound by the determinations of the United States Supreme Court on issues of

*(Footnote Continued Next Page)*

safeguards beyond those set forth in section 1102.1.  ***See Commonwealth v. Moye***, 1924 WDA 2016 (Pa. Super. filed Sept. 29, 2017) (unpublished memorandum decision).  The ***Batts II*** Court stated:

> [T]o effectuate the mandate of ***Miller*** and ***Montgomery*** [***v. Louisiana***, 36 S.Ct. 718 (2016)], procedural safeguards are required to ensure that life-without-parole sentences are meted out only to "the rarest of juvenile offenders" whose crimes reflect "permanent incorrigibility," "irreparable corruption" and "irretrievable depravity," as required by ***Miller*** and ***Montgomery***. . . . **[W]e recognize a presumption against the imposition of a sentence of life without parole for a juvenile offender. To rebut the presumption, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the juvenile offender is incapable of rehabilitation.**

***Batts II***, ***supra*** at 415-16 (emphasis added).

Pursuant to this Court's remand order, and in compliance with ***Batts II***, the trial court conducted a resentencing hearing on September 6, 2018.  In advocating that the court resentence Moye to LWOP, the only new evidence that the Commonwealth presented at the resentencing hearing was a victim impact statement.  Moye presented the testimony and supplemental expert

_____

> federal law, including the construction and interpretation of the federal constitution[,]" ***Hall v. Pa. Bd. of Probation and Parole***, 851 A.2d 859, 863 (Pa. 2004), we must analyze this appeal based on ***Jones***.  **In other words, when reviewing the legality of a sentencing court's imposition of a LWOP sentence, we may only focus on the *Jones* factors and not those espoused in *Batts II*.  We consider the *Batts II* factors as part of the discretionary aspects of the LWOP sentence**.

***DeJesus***, ***supra*** at *6-7 (emphasis added).

report of Bruce Wright, M.D.,[13] a forensic psychiatrist, who opined that it was possible that Moye could be rehabilitated. Doctor Wright could not conclude that Moye was permanently incorrigible or incapable of rehabilitation. Nonetheless, on December 20, 2018, the trial court found Moye permanently incorrigible beyond a reasonable doubt and re-imposed a sentence of LWOP on the homicide conviction.

Moye filed post-sentence motions, which the court denied, and he filed a second appeal to this Court. This Court set forth a comprehensive review of the decisional law and the resentencing hearing notes of testimony,[14] and

---

[13] Doctor Wright prepared an expert report and provided expert testimony in connection with Moye's initial sentencing in 2016.

[14] The panel stated:

> [T]he record reflects that the sentencing court considered both the factors announced in *Miller* and the factors appearing in [section] 1102.1(d). In addressing those factors, the sentencing court noted the following circumstances and events marking Moye's life from childhood up through his incarceration for his homicide conviction[, including his "chaotic childhood," "no stable father-figure" early introduction to drug use and drug dealing, "frequent fights" in elementary school, engaging in "arson by burning down a couple of houses (one abandoned and two occupied) because he and his friends were bored," engaging in "gunplay" by shooting guns all through the city of Baltimore and participating "in gang activity due to his poor relationship with his mother."].
>
> In 2010, when Moye was twelve, his mother moved him to Bedford County, Pennsylvania, due to his criminal activities in Baltimore. Moye's behavioral issues continued after the move, and he was kicked out of school in the sixth grade after he exposed himself. Moye then attended an alternative education program for one and

*(Footnote Continued Next Page)*

one-half years, before returning to school in the eighth grade. Moye got into a fight and failed to do any work[] and was again kicked out of school and sent back to an alternative education program.

In 2011, when Moye was thirteen, he was placed in the Children's Aid Home because he got in a physical altercation with his mother at school. Moye escaped from the home after thirty days, and remained at large until police found him.

In 2013, when Moye was fifteen, he was re-admitted to the Children's Aid Home because he had pending delinquency and dependency matters. Moye admitted to breaking into and stealing cars. He also told [] Dr. Wright that, while living in Bedford County, he threatened people with weapons while attempting to steal from them, intimidated people, and continued to sell drugs. D[octor] Wright also found that Moye had a severe substance abuse problem, as he had consumed marijuana, alcohol and opio[i]ds on a daily basis since pre-adolescence.

In 2014, Moye was placed at Outside In boot camp as part of the delinquency action after he was caught stealing a car. Moye did very well in that program and was released after five months and placed on probation. However, less than two months after his release from Outside In, Moye committed the offenses at issue.

In 2016, prior to his initial sentencing for the crimes in this matter, Dr. Wright evaluated Moye and diagnosed him with conduct disorder-childhood onset severe, cann[a]bis use disorder, alcohol use disorder, and opioid use disorder. He also noted that Moye had a history of severe and, at times, very dangerous impulsivity, and very severe and dangerous recidivist behavior.

In 2018, prior to his resentencing for the crimes in this matter, Dr. Wright re-evaluated Moye and prepared a supplemental expert report. D[octor] Wright noted that Moye was briefly incarcerated at SCI Camp Hill, and had no disciplinary or behavior problems at that facility. However, since his transfer to SCI Pine Grove in February 2017, he had experienced ups and downs. At SCI Pine Grove, Moye was involved in a physical altercation with another inmate, and was re-assigned to the Restrictive Housing Unit for three days. He had another disciplinary problem when a verbal

*(Footnote Continued Next Page)*

altercation with an inmate became physical, and Moye "messed up" the other inmate's face. Moye was reassigned to the Restrictive Housing Unit for an additional period of time.

Notably, the sentencing court acknowledged that Dr. Wright identified several positive prognostic indicators. Specifically, Dr. Wright indicated that Moye expressed a desire to improve, and was participating in classes, leadership development programs, therapeutic communities, and religious activities. Moye indicated that he understood that he had done something wrong when he was a kid, but noted that he was now 20, and that he had grown so much, and wanted the world to see that he was a changed individual and can be in society again. Moye further indicated that he had things he wanted to accomplish, namely, finish school, take rehabilitation programs, and do some things on his own. D[octor] Wright observed that Moye is relatively young and will mature with time and continued treatment and rehabilitation.

The sentencing court also considered the presentence investigation report ("PSI"), which indicated Moye's juvenile misdemeanor offenses of theft by unlawful taking and receiving stolen property in 2013, and another theft by unlawful taking in 2014, which was graded as a third-degree felony. While Moye was on supervision and probation for these offenses, he violated the terms of such supervision and probation by testing positive for marijuana, failing to report to the probation office and outpatient drug and alcohol counseling for scheduled appointments, and failing to meet his academic expectations and requirements. The PSI also detailed Moye's delinquency and dependency actions, and placements with various agencies.

The PSI further indicated that on December 29, 2014, a violation of probation was filed against Moye for testing positive for marijuana on December 19, 2014, and for failing to report to the probation office. A violation of probation hearing was scheduled for January 9, 2015. On the afternoon preceding the [violation of probation] hearing, Moye and his mother met with Moye's probation officer, who advised them of the different outcomes that the court could impose the following day. Moye left the probation office at approximately 4:50 p.m. on January 8, 2015, and

*(Footnote Continued Next Page)*

acknowledged that the trial court had considered the statutory factors set forth in section 1102.1. However, we again vacated and remanded for resentencing, concluding that the Commonwealth failed to rebut the presumption against LWOP as an appropriate individualized sentence for Moye. We stated:

> Based on our review of the record, and mindful of the Commonwealth's burden of proof, we conclude that the sentencing court's legal conclusion that Moye is entirely incapable of being rehabilitated is not supported by the record. Moye enjoyed a presumption against the imposition of a [LWOP] sentence, and the Commonwealth bore the burden of proving beyond a reasonable doubt that there is no possibility that Moye could be rehabilitated at any point later in his life, no matter how much time he spends in prison and regardless of the amount of therapeutic interventions he receives. Indeed, the **Batts II** Court recognized that a presumption operates as proof of the ultimate fact unless and until the opposing party comes forward with evidence sufficient to rebut the presumption. Critically, the Commonwealth did not retain an expert, submit an expert report, or present expert testimony on this critical issue. [15]

**Commonwealth v. Moye**, 224 A.3d at 56 (internal citations omitted).

_____

appeared in court the next morning at 9:00 a.m. In the intervening hours, he murdered Walters.

**Commonwealth v. Moye**, 224 A.3d at 54-56 (citing N.T. Resentencing, 12/20/18, at 13-55) (internal citations omitted).

15 In **Moye**, we noted that **Batts II** did not specifically require expert testimony for a court to determine that a juvenile offender is permanently incorrigible, but that "it certainly highlighted the value of input from expert psychologists." **Moye**, **supra** at 56. The panel in **Moye** noted that the only evidence the Commonwealth presented at resentencing was Walter's mother's victim impact statement. **Id.** "The Commonwealth presented no evidence whatsoever regarding Moye's inability to be rehabilitated[.]" **Id.**

We also stated that in making its legal determination that Moye is permanently incorrigible and incapable of rehabilitation, the sentencing court "largely ignored the positive prognostic indicators identified by Dr. Wright, and repeatedly stated that the only factors suggesting that Moye could be rehabilitated were his negative childhood environment, age and his positive performance while in juvenile placement at Outside In." *Id.* at 57. The sentencing court's "limited assessment" did not account for Moye's efforts to improve himself in prison, and it ignored "the credible expert opinion of Dr. Wright that, in time and 'with maturation, structure and appropriate interventions,' it is possible that Moye could be successfully rehabilitated." *Id.*, *citing* Wright Supplemental Expert Report, 9/4/18 at 6. We cautioned the court to be mindful of "*Miller's* central intuition," which is "that children who commit even heinous crimes are capable of change." *Id.*, citing *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). The panel instructed the trial court, upon resentencing, to "provide [Moye] **some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation**." *Id.* at 57, citing *Miller*, 567 U.S. at 479 (quoting *Graham v. Florida*, 560 U.S. 48, 74 (2010) (emphasis added).

On November 17, 2020, Moye, at the age 21, was before the sentencing court for the third time. At the resentencing hearing, the Commonwealth again presented the testimony of the victim's mother. The prosecutor asked for a sentence of "forty-five (45) to ninety (90) years" *see* N.T., Resentencing Hearing, 11/17/20, at 17, and defense counsel sought a sentence of 35 to 70

years' incarceration, **see id.** at 41 (where Moye would be eligible for parole at age 51). On December 20, 2020, the court resentenced Moye to fifty years to life; Moye will be eligible for parole at age 66.

Moye filed post-sentence motions, which the court denied. In this timely appeal, Moye challenges the discretionary aspects and the constitutionality of his sentence. **See** Appellant's Brief, at 15. Of note, Moye claims his sentence amounts to "*de facto* life." **Id.** at 7.

Moye raises the following issues on appeal:

1. Whether the trial court's sentence, which guarantees that [Moye] will remain incarcerated until at the very least the age of 66, leaves [Moye] with no meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation at a reasonable age; but, rather, the trial court imposed a sentence that is *de facto* life?

2. Whether the trial court's application of fifty (50) years to [Moye's] natural life[,] as [Moye] was a juvenile at the time of the offenses[,] violates the protections provided against cruel punishment pursuant to the Eighth Amendment of the United States Constitution and Article I, § 13 of the Pennsylvania Constitution?

3. Whether the trial court imposed a sentence upon [Moye] that exhibits bias, ill-will and prejudice that is also manifestly excessive and excessively punitive in nature?

4. Whether the trial court abused its discretion in imposing a sentence of fifty (50) years to [Moye's] natural life when it failed to consider mitigating evidence and factors presented to the court?

5. Whether the trial court abused its discretion in applying the required factors outlined in 18 Pa.C.S.A. § 1102.1(d) and 42 Pa.C.S.A. § 9721(b) to find that factors weighed heavily against [Moye], thereby justifying the imposition of fifty (50) years to [Moye's] natural life?

Appellant's Brief, at 7-8 (re-ordered for ease of disposition).[16]

Moye's constitutional challenge and his claim that the court imposed an impermissible *de facto* life sentence present questions as to the legality of his sentence. In such cases, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Melvin**, 172 A.3d 14, 19 (Pa. Super. 2017). **See Commonwealth v. Clary**, 226 A.3d 571, 580 (Pa. Super. 2020) (claim that trial court imposed impermissible *de facto* life sentence in violation of **Miller** constitutes challenge to legality of sentence). Moreover, **unless we determine that Moye's sentence is a *de facto* LWOP sentence**, we need not review whether the Commonwealth established beyond a reasonable doubt that Moye is permanently incorrigible and incapable of rehabilitation. **Commonwealth v. Foust**, 180 A.3d 416 (Pa. Super. 2018).

In **Foust**, this Court held a trial court "may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* LWOP sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation." **Id.** at 433. There, the juvenile was convicted of two killings. We held that courts "must consider the **individual sentences**, not the aggregate, to determine if the trial court imposed a term-of-years sentence [that] constitutes a *de facto* LWOP sentence." **Id.** at 438 (emphasis added). We concluded that the juvenile's

---

[16] The Commonwealth has not filed a brief in this case.

two consecutive sentences of 30 years to life, viewed individually, did not constitute a *de facto* LWOP sentence. **Id.**

Notably, the **Foust** Court refused to draw a bright line as to what does and does not constitute a *de facto* LWOP sentence, but it recognized that "[t]here are certain term-of-years sentences [that] clearly constitute *de facto* LWOP sentences. For example, a 150-year sentence is a *de facto* LWOP sentence." **Id.** at 438. The instant case, involving a sentencing term of 50 years to life, where the defendant is not eligible for parole until age 66, falls clearly "between constitutional and unconstitutional parameters." **See Commonwealth v. McGrath**, 255 A.3d 581 (Pa. Super. 2021), *overruled on other grounds by* **Commonwealth v. DeJesus**, **supra**.

In **McGrath**, we held a juvenile's sentence of 48 years to life (where McGrath would be eligible for parole at age 65) for the rape and murder of an 84-year-old woman did not amount to a *de facto* life sentence. We stated:

> Here, the trial court properly considered the age when Appellant would be eligible for parole in order to determine that the new sentence was not the functional equivalent of *a de facto* sentence of [LWOP]. Since Appellant will have a **meaningful opportunity to obtain his release**, we agree with the trial court's assessment that Appellant's sentence cannot be considered *de facto* [LWOP].

**McGrath**, 255 A.3d at 587 (emphasis added).

More on point is the decision in **Commonwealth v. Anderson**, 244 A.3d 40 (Pa. Super. 2019). There, we held that the juvenile defendant's resentence of 50 years to life, where he began serving his sentence at age 17

and would be eligible for parole at age 67, was also not a *de facto* life sentence without parole. *Id.* at 47. We stated:

> Admittedly, Appellant herein will be sixty-seven years old, . . . when he is first eligible for parole. He argues that his sentence must "**provide an opportunity for release based solely on the most tenuous possibility of a defendant surviving the minimum sentence imposed**." Appellant's Brief at 29 (quoting [*Commonwealth v.* ]*Bebout*, [186 A.3d 462,] 468 [(Pa. Super. 2018)]. He contends it must be "**at least plausible that one would survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits**." *Id.* Nonetheless, he stops short of demonstrating how the fifty-year minimum sentence imposed herein violates those parameters. Appellant, while urging this Court to apply the reasoning in *Bebout*, fails to establish that it is unlikely he will survive until his minimum release date, or that there is no opportunity for release in such time as to permit him to enjoy a period of liberty. We are not willing to presume, without more, that a fifty-year minimum sentence in these circumstances affords him no reasonable possibility of release or a meaningful life thereafter.

*Id.* (emphasis added).

Here, like *Anderson*, Moye has not demonstrated how his minimum sentence violates those parameters. The trial court stated: "In my view of [Moye's] health, his age, I find that a minimum sentence of 50 years is not a *de facto* life sentence. I believe that [it] provides some meaningful opportunity for him to obtain a release based on his demonstrated maturity and rehabilitation if that happens." N.T. Resentencing Hearing, 11/17/20, at 76 (emphasis added). The court acknowledged Moye's "minimum release date" would "put him at 66" and that it is "at least plausible that he could survive until the minimum release date." *Id.*

As we understand defense counsel's arguments at the second re-sentencing hearing, Moye was unable to participate in many of the occupational, educational, therapeutic, and rehabilitative programs offered in prison because he was sentenced to LWOP; as a "lifer" he would not be eligible for the programs until he had ten years' good conduct, whereas other inmates can participate after two years' good conduct. **See** N.T. Resentencing Hearing, 11/17/20, at 28. Moye's current sentence affords him a meaningful opportunity to engage in rehabilitative programs so as to obtain release, and it is "at least plausible" he will survive until the age of 66.

Here, the trial court properly considered the age when Moye would be eligible for parole in order to determine that the sentence was not a *de facto* LWOP sentence. Moye will have a meaningful opportunity to obtain his release and, therefore, we agree with the trial court's assessment that Moye's sentence is not a *de facto* LWOP sentence. **See Anderson**, **supra**; **McGrath**, **supra**; **see also Commonwealth v. Summers**, 245 A.3d 686 (Pa. Super. 2021) (concluding appellant's 40-year-to-life sentence in which he would be eligible for parole at age 57 not *de facto* LWOP); **Commonwealth v. Lekka**, 210 A.3d 343, 357-58 (Pa. Super. 2019) (concluding appellant's 45 years to life sentence in which he would be eligible for parole at age 62 not *de facto* LWOP); **Bebout**, **supra** (concluding appellant's 45 years to life sentence in which he would be eligible for parole at age 60 not *de facto* LWOP).

With respect to Moye's claim that the court erred in "imposing a sentence of life imprisonment without the possibility of parole as [Moye] was

a juvenile at the time of the offense which violates the protections against cruel punishment pursuant to the Eighth Amendment of the United States Constitution and Article I, § 13 of the Pennsylvania Constitution[,]" *see* Appellant's Brief, at 15, we reiterate that *Batts II* was abrogated by the United States Supreme Court in *Jones v. Mississippi*. *See supra* n. 12. The *Jones* Court confirmed that mandatory LWOP sentences for juvenile offenders violate the Eighth Amendment protection against cruel and unusual punishment, but the Court held sentencing schemes that allow discretionary imposition of life sentences pass muster under the federal constitution and need not require a separate finding of permanent incorrigibility. *See Jones*, 141 S. C.t at 1318-19. Because we conclude Moye's sentence does not amount to a *de facto* LWOP sentence, Moye no longer states a viable theory of relief under the Eighth Amendment or under Article I, § 13. *Foust*, *supra*.

Moye's final three issues challenge the discretionary aspects of his sentence. A challenge to discretionary aspects of a sentence does not entitle an appellant to review as a matter of right. Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke the Superior Court's jurisdiction on appeal by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 2119(f); (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015), quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Moye has filed a timely notice of appeal, has preserved his claims in a post-sentence motion, and has included in his brief a Rule 2119(f) statement. *Swope*, *supra*. We must determine, then, whether he has raised a substantial question as to the appropriateness of his sentence under the Sentencing Code.

A substantial question exists where the appellant "sets forth a plausible argument that the sentence violated a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa. Super. 2012) (citations and quotations omitted). On appeal, a defendant must provide, in writing, a statement specifying the following: (1) where his or her sentence falls in the Sentencing Guidelines, (2) what provision of the Sentencing Code has been violated, (3) what fundamental norm the sentence violated, and (4) the manner in which it violated the norm. *Id.*

In his Rule 2119(f) statement, Moye claims the court imposed an excessive sentence, failed to consider mitigating factors, and did not properly apply the statutory factors in 18 Pa.C.S.A. § 1102.1(d) and 42 Pa.C.S.A. § 9721(b). *See* Appellant's Brief, at 16. We find Moye has raised a substantial question. *See Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005) (excessive sentencing claim made in conjunction with assertion that court did not consider mitigating factors may raise substantial question). *See*

*also Commonwealth v. Mouzon*, 812 A.2d 617, 625-26 (Pa. 2002) (claim of excessive sentence, even within statutory limits, may raise substantial question).

Accordingly, we will proceed to the merits of Moye's final three claims challenging discretionary aspects of his sentence.

Our standard of review regarding challenges to the discretionary aspects of sentencing is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

> [A] sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself. The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, [] and prohibiting a sentence of total confinement without consideration of "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant[.]" 42 Pa.C.S.[A.] § 9725.

*Commonwealth v. Luketic*, 162 A.3d 1149, 1160-61 (Pa. Super. 2017) (some internal citations and quotation marks omitted). The rationale behind such broad discretion and our deferential standard of appellate review is that

"the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Moury***, 992 A.2d 162, 169-70 (Pa. Super. 2010).

Our review of the record in this case indicates the sentencing judge did not abuse his discretion in sentencing Moye. Contrary to Moye's assertion that the trial court disregarded mitigating factors, the trial court explicitly stated that it considered

> [Moye's] age, his immaturity or failure to appreciate the risk and consequence of his actions, his family and home environment from which he [could] not extricate himself, the circumstances of the homicide including the extent of participation [of] any family and peer pressure, . . . the possibility of his rehabilitation and his background, mental, and emotional development. []I have discussed those all at length at the prior sentencing proceedings, [***see*** note 14, ***supra***], and I'll incorporate all of my discussion from the prior sentencing proceeding on that.

N.T. Resentencing Hearing, 11/17/20, at 56, *citing* N.T. Resentencing Hearing, 12/20/18, at 13-55. The sentencing court fashioned Moye's sentence in accordance with all relevant statutory factors as required under Pennsylvania law.[17] The court also considered the statutory factors in section 1102.1(d), including

---

[17] The court also had the opportunity to twice consider the factors that the United States Supreme Court recommended for juveniles in ***Miller***. ***See*** N.T. Resentencing Hearing, 11/17/20, at 56-57. However, we need not review whether the court properly considered the ***Miller*** factors where it chose not to sentence Moye to LWOP and where Moye's sentence does not amount to *de facto* LWOP. ***See Batts II***, ***supra*** at 460.

the impact on the community, the threat of safety to the public posed by the defendant, the nature and circumstances of the crime, the degree of the defendant's culpability, the sentencing guidelines [] age-related characteristics including his mental capacity, his maturity, degree of criminal sophistication, his prior delinquent history and institutional and probation report.

*Id.* at 57-58, *citing* 18 Pa.C.S.A. § §1102.1(d)(7)(i-vii).  The court then stated that "because we're not dealing with whether or not the defendant is permanently incorrigible or incapable of being rehabilitated" it would review the general sentencing factors under section 9721 of the Sentencing Code. *Id.* at 58.

Section 9721(b) provides that the court shall fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S.A. § 9721(b).  The court is required to consider and make findings on the record related to the following factors:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family.  A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6)    Guidelines for sentence and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7)    Age-related characteristics of the defendant, including:

(i)      Age.

(ii)     Mental capacity.

(iii)    Maturity.

(iv)    The degree of criminal sophistication exhibited by the defendant.

(v)     The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi)    Probation or institutional reports.

(vii)   Other relevant factors.

18 Pa.C.S.A. § 1102.1(d).

The trial court engaged in a careful and thoughtful consideration of each of these factors and set forth its findings on the record. *See* N.T. Resentencing Hearing, 11/17/20, at 57-75. In addition to noting that Moye's rehabilitative needs are extensive, the court considered the fact that Moye committed other violent acts, also at a very young age, and other attempts at rehabilitation, through dependency, delinquency, and probation, were unsuccessful. *Id.* at 61-62. The court detailed prior attempts at rehabilitation that had failed–his mother's moving him from Baltimore to Bedford County in addition to services and placement through the juvenile system and Children & Youth Services. *Id.* at 66-67. *See* 42 Pa.C.S.A. § 9721(b)(7)(v). The court also noted that Moye has engaged in assaultive behavior while in confinement,

and that he has only responded to rehabilitation in a structured and confined environment. *Id.* at 59, 62, 65. The court stressed that Moye committed this homicide "less than two months after being released from placement[,]" and "only hours after meeting with a probation officer and only hours before he would be attending court for his juvenile delinquency hearing." *Id.* at 66.

With respect to the gravity of the offense, the court specified this was not a "spur of the moment killing," or an "impassioned killing,"

> [t]his was premeditated, pre-planned. And not only that, when the plan changed in that the wrong person showed up[, Moye] nonetheless still made the decision to kill someone. [By Moye's] own admission, the victim was essentially tortured by riding around with her in the vehicle for at least, again, to his statement[,] for at least 20 minutes while she was still alive after being shot in the neck and head.

*Id.* at 63-64. The court also recognized, with regard to the protection of the public, that Moye engaged in violent behavior from a very young age, including arson, drug dealing and admitting to intimidating and "shooting randomly at people while he lived in Baltimore." *Id*. at 64.

The sentencing court thoroughly considered the factors outlined in sections 1102.1(d) and 9721(b), and determined those factors weighed against Moye. Moye's argument that the court improperly weighed those factors "heavily against [him]," fails. In the sentencing context, an abuse of discretion is not shown merely by an error in judgment. Moye must establish, by reference to the record, that the sentencing court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-

]will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Hoch***, 936 A.2d 515, 517–18 (Pa. Super. 2007) (quoting ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006)). Moye has failed to establish such an abuse. Moreover, in ***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007), our Supreme Court "specifically admonished that the weighing of factors under [section] 9721(b) was *exclusively for the sentencing court*, and an appellate court could not substitute its own weighing of those factors." ***Commonwealth v. Bowen***, 975 A.2d 1120, 1123–24 (Pa. Super. 2009) (emphasis added), *citing* ***Walls***, ***supra*** at 966. ***See also Moury***, ***supra*** at 169-70 (abuse of discretion may not be found merely because appellate court might have reached different conclusion).

The court considered all the proper statutory factors, the Sentencing Guidelines, the PSI, testimony from the victim's mother, testimony from Moye's uncle, testimony from a friend of Moye's family, and Dr. Wright's testimony, as well as Moye's allocution. After consideration of all relevant sentencing factors and mitigation evidence, the court ultimately determined a term of fifty years to life was an appropriate sentence. The court's findings are well-supported by the record and reflect thoughtful and considered judgment. We are unable to discern a manifest abuse of discretion. ***Gonzalez***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021