**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY L. PERRY | : | |
| | : | |
| Appellant | : | No. 1968 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 14, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006550-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:            **FILED AUGUST 28, 2023**

Larry L. Perry appeals from the judgment of sentence imposed following an open *nolo contendere* plea to two counts of statutory sexual assault and two counts of corruption of minors.[1] For these offenses, Perry was sentenced to an aggregate fifty-two to one-hundred-and-four months of imprisonment. On appeal, Perry exclusively challenges the discretionary aspects of his "manifestly excessive" sentence, contending, *inter alia*, that the court relied on inappropriate factors. After a thorough review of the record, we conclude that the court did not abuse its discretion in imposing its sentence. Therefore, we affirm.

In summary:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. § 3122.1 and 18 Pa.C.S. § 6301(a)(1), respectively.

On July 19, 2019, the Abington Township Police received a report from a twenty-six[-]year[-]old woman [, Victim 1,] who indicated that she had an inappropriate sexual relationship with [Perry] when he was her teacher at the Parkway School in Philadelphia, [Pennsylvania]. [Victim 1] further detailed that she met [Perry] at the age of thirteen and the two initially exchanged flirtatious texts. Eventually this developed into a sexual relationship when [Victim 1] was fifteen years old. During these sexual encounters, [Perry] would pick [Victim 1] up near her residence and transport her back to his residence located in Willow Grove, [Pennsylvania]. [Victim 1], while still a minor and [Perry's] student, engaged in sexual intercourse with [Perry] multiple times at this residence. This sexual relationship continued into [Victim 1's] adulthood and ended when she was about twenty-five years old.

During the course of this investigation, Abington Police learned of another female student, [Victim 2], who had engaged in an inappropriate sexual relationship with [Perry]. [Victim 2] indicated that she had met [Perry] when she was either fourteen or fifteen years old when she was a freshman at the Parkway School in Philadelphia. [Perry] provided her with his cell phone number and communicated with [Victim 2] by email, phone calls and text messaging. [Victim 2] recounted that she had a troubled home life due to her father's addiction to drugs and her mother's significant mental health issues. In light of these factors, [Victim 2] would talk with [Perry] in order to confide in him and to receive support and guidance. [Perry] subsequently began to drive [Victim 2] home from school. [Perry's] relationship with [Victim 2] eventually progressed to sexual in nature and the two engaged in sexual intercourse on several occasions beginning when she was fifteen years old. This sexual relationship continued into [Victim 2's] adulthood and ended when she was approximately twenty-five years old.

Trial Court Opinion, 10/6/22, at 1-2 (numerical parentheticals omitted).

After entering into a *nolo contendere* plea to the four counts enumerated above, Perry received "an aggravated[-]range sentence of twenty to forty months of imprisonment with respect to each statutory sexual assault charge and another aggravated[-]range sentence of six to twelve months of

imprisonment with respect to each corruption of minors charge." ***Id***., at 2 (numerical parentheticals omitted). In total, as all sentences were ordered to run separately, Perry was consecutively sentenced to the aforesaid fifty-two to one-hundred-and-four months of imprisonment.

Following sentencing, Perry filed a timely post-sentence motion, which was correspondingly denied. Thereafter, Perry filed a timely notice of appeal. We note that the relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and as such, this appeal is ripe for review.

On appeal, Perry presents one issue for our consideration:

1. Did the lower court abuse its discretion at sentencing or enter a manifestly excessive sentence?

***See*** Appellant's Brief, at 4.

As this case exclusively contests the lower court's sentencing determinations, we start with our well-settled standard of review:

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Moye***, 266 A.3d 666, 676-77 (Pa. Super. 2021) (citation omitted).

However, because Perry specifically questions the discretionary aspects

of his sentence, there is a preliminary hurdle he must satisfy prior to review of his underlying substantive claim. In particular, "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). Accordingly, "[a]n appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id*.

> In expounding upon the four-part test, an appellant must show that:
>
> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "Substantial questions" have been interpreted as those questions that set "forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted); *see also* 42 Pa.C.S. § 9721(b) (mandating that a sentence of confinement must be consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[ ]"). If the four-part test is satisfied, then we are tasked with reviewing an appellant's substantive claim, paying particular attention to whether the lower court, at

- 4 -

any point, abused its discretion in sentencing. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 328-29 (Pa. Super. 2019) (*en banc*).

Perry timely filed a post-sentence motion and notice of appeal. Moreover, Perry included a concise Rule 2119(f) statement in his brief. *See* Appellant's Brief, at 18. We conclude that he has met the first three requirements of the aforementioned four-part test.

In gleaning whether his Rule 2119(f) statement contains a substantial question, we conclude that Perry has *minimally* complied with his obligation to present a substantial question. Distilled down, his statement contains two bald sentences relevant to our determination: "Mr. Perry contends that the trial court imposed a manifestly excessive sentence and abused its discretion. … Mr. Perry also contends that the trial court's sentence was inconsistent with Pennsylvania's system of individualized sentencing." *Id*. However, the Commonwealth concedes "that such allegations set forth a substantial question for purposes of this court's analysis[.]" Appellee's Brief, at 8. Implicitly, and as gathered through the rest of his brief, Perry questions whether the sentencing court acted with overt bias when it sentenced him. Because "an allegation of bias in sentencing implicates the fundamental norms underlying sentencing[,]" *Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa. Super. 2011), we find that he has raised a substantial question. Consequently, we proceed to the merits of Perry's claim that his total sentence was manifestly excessive.

Perry suggests that the court was without any basis to: (1) impose aggravated-range sentences at any of the four *nolo contendere* counts; or (2) run the statutory sexual assault sentences consecutive to the corruption of minors sentences. *See* Appellant's Brief, at 20 (remarking that, in the absence of either, Perry's sentence would have been twenty-eight to fifty-six months of incarceration). Perry bolsters his argument through his proffer of "five factors[.]" *Id*. At 21.

First, Perry contends that "the trial court relied on its own imagination of what happened to attack [his] character inaccurately." *Id*. Perry takes umbrage with the court calling him "a sexual predator, the wors[t] type ever, since as their teacher, [he was] to protect them, not rape them." N.T., 3/14/22, at 131. Instead, Perry posits that forcibly kidnaping, torturing, raping, and killing an infant is worse than any of Perry's actions. *See* Appellant's Brief, at 21. Relatedly, Perry avers that the court speculatively sentenced him as if there were more than two victims. *See id*. ("[T]he [sentencing] court presumed with no evidence that there were likely other victims despite none of the witnesses being aware of any such conduct."). Replicated in full, the court stated:

> [Perry's] conduct also constituted typical grooming by a sexual predator. First, [Perry] picked [his] targets. The ones [he] knew - - the ones we know about are [Victim 1] and [Victim 2]. Only [Perry] know[s] if there were more. [Perry] picked them because [he] knew they were vulnerable and needed [him].

N.T., 3/14/22, at 130. Finally, under the same auspice, Perry asserts that the

court "ascribed a sexual psychology to [him] with no basis in fact." Appellant's Brief, at 22. Perry faults the court remarking that the victims "got too old" for him so that he needed to find other minors "to victimize." N.T., 3/14/22, at 132.

Second, Perry challenges the court's statement, which unequivocally indicated that Perry's actions were "not consensual relations. This was rape." *Id*., at 130. Conversely, Perry writes that "there were no claims that the sex was not factually consensual." Appellant's Brief, at 22. As "rape" is a distinctly enumerated crime in Pennsylvania, one he had not been charged with nor pleaded *nolo contendere* to, Perry faults the court's subsequent explanation that it utilized "rape" to describe "the fact that the women were not of age when the sex began." *Id*., at 23 (citation to the court's opinion omitted). Perry argues that "[i]f the [sentencing] court merely meant through the use of the word 'rape' that the victims were not of age, that was no reason to aggravate the sentence to the maximum extent that comported with the guidelines." *Id*., at 23-24.

Third, Perry suggests that the structure of his sentence was "designed … to insulate it from more stringent appellate review." *Id*., at 25. Specifically, because he was sentenced within, but in the aggravated-range, of the sentencing guidelines and further sentenced consecutively, the court avoided "entering an above-guidelines sentence[,]" obviating the need to provide a written statement justifying a deviation from the guidelines. *Id*., *citing* 42

Pa.C.S. § 9721(b). Moreover, the crimes against both victims featured "the same conduct" insofar as there were no separate facts providing daylight between the corruption of minors and statutory sexual assault crimes. *Id*., at 26 (remarking that, based on each offense, as defined, Perry did not commit an additional or separate "act … that would tend to corrupt the women's morals beyond the mere act of sexual intercourse[]" thereby making any corruption of minors sentence unsubstantiated). As such, "[t]here was no additional harm that merited a separate consecutive sentence." *Id*.

Fourth, Perry believes that the court erroneously concluded that he "lacked remorse for his actions." *Id*., at 27. Referring to it as "a single slip of the tongue[,]" Appellant's Brief, at 27, Perry claims that the court placed too much emphasis on him saying that he was regretful that his victims "*would think* that [he's] brought them harm." N.T., 3/14/22, at 128 (emphasis added). Instead, the court should have taken a broader perspective of Perry's remorse, which indicated that he was sorry for his actions.

Fifth, Perry contends that the court did not consider his "amenability to treatment." Appellant's Brief, at 28. Specifically, the court effectively ignored, or at a minimum did not acknowledge, the sex offender and needs assessment report establishing that his "treatment with cognitive behavioral therapy … could be effective." *Id*. (record citation omitted).

In addressing Perry's issues in turn, we first underline the fact that the sentencing court had the benefit of a pre-sentence investigation ("PSI")

report. Accordingly, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

Through our review of Perry's discrete allegations, cognizant of the wide latitude afforded to the court in imposing a sentence, we find none of them to have merit. To start, when juxtaposed against the court's discussion at sentencing, it is unclear the legal import of Perry's comparison of his own actions to what he considers the actions of "worse offenders." In any event, while the court's rhetorical flourish of calling him "the wors[t] type ever" may or may not be factually true, Perry has not presented any authority to establish that the court's phrasing, referring to him as a sexual predator that was granted access to his victims specifically due to his position as a teacher, somehow constituted reversible error.

As to the court's alleged consideration of there having been more than two victims, the court concluded, and the record reflects, that it "made no representation that it knew there were other victims or that it was hypothesizing that there had to be other victims." Trial Court Opinion, 10/6/22, at 5. "The court specifically stated that the only victims of [Perry's] actions the court knew about were the victims at issue in the instant matter." **Id**. Perry has not provided any evidence that the court crafted "its sentence in light of some unknown or hypothetical victims." **Id**. We agree. In fact, the

court expressly disclaimed *any* indica of there being other victims. *See* N.T., 3/14/22, at 130 ("Only you[, Perry,] know if there were more [victims].").

Lastly, while the court did indicate that Perry stopped his involvement with the victims because they "got too old for [Perry] and [Perry] needed to find another minor to victimize[,]" *id*., at 132, Perry has again failed to show that this so-called "psychological evaluation" of Perry's tendencies, a singular sentence that is being argued in isolation, necessitates reversal. To the extent that the court forayed into discussion of something beyond the scope of the facts underpinning Perry's criminal acts and logical inferences taken therefrom, there is no evidence that the court's belief of Perry's desire to "find another minor" after he had exhausted the two victims played any part in its ultimate sentencing determinations. In total, then, Perry's first factor does not establish any abuse of discretion from the lower court.

Regarding the court's use of the word "rape," the court writes that "due to the ages of the victims, they were unable to legally consent to engaging in sexual relations with [Perry]." Trial Court Opinion, 10/6/22, at 4 (citing, further, **Commonwealth v. Parsons**, 969 A.2d 1259, 1271 (Pa. Super. 2009), wherein this Court wrote that, as corruption of minors and statutory sexual assault are statutory offenses, victims have *no capacity to consent*) (emphasis added). Notwithstanding the court's use of the word "rape," predicated on the nonconsensual nature of Perry's actions and Perry's position of power over his victims, "the court deemed it was appropriate to use the

layman's term of rape at the sentencing hearing[.]" Trial Court Opinion, 10/6/22, at 5. The court disclaimed making "any determinations that [Perry] utilized any degree of force which would have satisfied elements under the rape statute[, *see* 18 Pa.C.S. § 3121], nor did the court consider the sentencing guidelines with a rape conviction." *Id*. (internal citation formatting altered). Instead, "[t]he court simply wanted to impress upon [Perry] the gravity of what he had done, which it deemed would be more effective with the use of the layman's term of rape." *Id*. The court's use of the word "rape" when compared with the statute defining the criminal act of rape, *see* 18 Pa.C.S. § 3121(a) (as is relevant here, rape is the engaging in sexual intercourse with a complainant by forcible compulsion or threat of forcible compulsion), was arguably imprecise, given the nature of the crimes that Perry pleaded *nolo contendere*.[2] However, the court has expressly denied any utilization of the legal definition of rape, or its attendant sentencing guidelines, in imposing Perry's aggregate sentence. Therefore, there is no evidence that the court found Perry guilty of an independent crime. In the absence of any demonstration that the court was forbidden from expressing a colloquial understanding of the nonconsensual activity between Perry and his victims,

---

[2] We note that culpability for intercourse based on the age of the victim and offender was previously set forth in the "statutory rape" statute, *see* **18 Pa.C.S. § 3122 (repealed)**, which was repealed in 1995 and replaced with the "statutory sexual assault" offense of which Perry was convicted. *See* ***Commonwealth v. Dennis***, 784 A.2d 179, 180-81 (Pa. Super. 2001) (discussing legislative history).

Perry is not entitled to relief at this factor.

Moving to his next contention, Perry contests the aggravated and consecutive nature of his sentence. Given the wide discretion afforded to sentencing courts, "on the appropriate record and for the appropriate reasons, [that court may] consider any legal factor in imposing a sentence in the aggravated range." **Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). Similar discretion is afforded to courts in imposing consecutive or concurrent sentences. **See** 42 Pa.C.S. § 9721(a) (allowing a court to impose sentences "consecutively or concurrently[]"); **see also Commonwealth v. Taylor** 277 A.3d 577, 593 (Pa. 2022).

> In justifying its sentencing scheme, the court states that
>
> [Perry] was a high school teacher who took advantage of the vulnerabilities of two of his students for the purpose of engaging in sexual relations with both women. [Perry] utilized sexual grooming practices with both students in order to gain their trust and control and conceal the nature of the relationships.

Trial Court Opinion, 10/6/22, at 9-10. As the Commonwealth points out, "[t]he statutory sexual assault charges only covered the sexual contact that [Perry] had with the victims during the period of time that the victims had sex with [Perry] while they were under age [sixteen]." Appellee's Brief, at 21 (citation omitted); **see also** 18 Pa.C.S. § 3122.1 (requiring, *inter alia*, the victim to be "under the age of 16 years[]"). "The corruption of minors charges covered the period of time that the victims engaged in sexual activity with [Perry] that extended from the time [the] victims were [sixteen] until they were [eighteen]

- 12 -

years old." Appellee's Brief, at 21 (citation omitted); *see also* 18 Pa.C.S. § 6301 (involving the act of "corrupt[ing] the morals of any minor less than 18 years of age[]"). The Commonwealth then describes the corruption of minors offense, as it applied here, to "encompass[ing] more than just the physical acts of sex that [Perry] engaged in with two minors. [Perry] violated the position of trust which he had as their teacher." *Id*.

The court's on-the-record explanation of its rationale in sentencing Perry consecutively and in the aggravated range at all four offenses is exhaustive. *See* N.T., 3/14/22, at 129-33. In particular, the court noted Perry's position as a "high school teacher[.]" *Id*., at 129. Despite this title, Perry "used [his] powers of teacher to satisfy [his] own sexual gratification. Due to [his] power over the students, [he] was in a position to lure or coerce those students to have sex with [him]." *Id*., at 129-30. "Due to their age and the power [he] had over them, they could not legally or morally consent to have sex with [him]." *Id*., at 130. Given Perry's position, he was in a position of trust. *See id*. "However, [he] took advantage of that trust by grooming those girls and then sexually abusing them. [He] took advantage of [his] position of trust to be a classic sexual predator." *Id*. The court also noted that Perry's conduct "constituted typical grooming by a sexual predator." *Id*. Perry picked known targets who "were vulnerable and needed [him]." *Id*. Then, he proceeded to develop a personal relationship with them, allowing his victims to confide in him. *See id*., at 130-31. Perry isolated his victims and then began sexually

exploiting them. *See id*., at 131. That grooming "continued for years, which allowed [Perry] to control them and prevent them from seeking help." *Id*. With there being two victims, the court stated that he needed "to be sentenced as to each of them. Otherwise, [he] would get a volume discount for [his] criminal conduct." *Id*. "This conduct went on for a period of time. This conduct was premeditated. [Perry's] conduct was predatory. It was not just a one-time incident." *Id*., at 131-32.

As the court had the benefit of a PSI report and unequivocally expressed its rationale for imposing its aggregate sentence, Perry has not presented a legally salient basis for this Court to deviate from the lower court's ultimate sentencing determination. We are obligated to "accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128 (Pa. Super. 2009). Accordingly, the court, did not abuse its discretion in imposing aggravated-range sentences at each count and ordering them to run consecutively.

Relatedly, as to Perry's belief that the sentencing court was erroneous in its determination that he lacked remorse for his crimes, the court was permitted to ascertain whether he was, in fact, remorseful. *See id***.** In making this determination, the court had the benefit of seeing him in person and hearing him speak. Moreover, the court was cognizant of the facts

underpinning Perry's crimes. Other than attempting to persuade this Court to reach an opposite conclusion as to his amount of remorse, Perry has not presented any reason to depart from the lower court's factual determination that, after observing and analyzing Perry's expressions and the content of his statement before the court, he showed a lack of remorse.

As to his final factor, which faults the court for not discussing his amenability to treatment options, Perry's claim is belied by the record. While he suggests it was not utilized at sentencing, the court clearly considered the contents of the sex offender and needs assessment report. Specifically, in pronouncing Perry's sentence, it stated that he "is to comply with the recommendations of the psychosexual evaluation." N.T., 3/14/22, at 135. Therefore, although it is unclear, based on his argument, whether this will lead to the specific pathway of treatment that he seeks, the court noted the at-issue report and made it an inherent part of its sentencing scheme. As such, Perry is due no relief on this issue.

As none of Perry's separate arguments contained within his overarching contention that the court abused its discretion in imposing its aggregate sentence are meritorious, we therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2023