J-A06013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE JAMAL WALKER | : | |
| | : | |
| Appellant | : | No. 1308 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 3, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0006694-2019

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  March 29, 2022**

Andre Jamal Walker (Appellant) appeals from the judgment of sentence

imposed after a jury convicted him of aggravated assault.[1]  We affirm.

The trial court detailed the facts established at the trial as follows:

> On May 24, 2019, at approximately 2:40 am, a Pittsburgh Police Officer responded to a call of shots fired and a man down at 951 Liberty Avenue.  When the officers arrived at the scene of the shooting, they saw the victim, Kristopher Capron, (hereinafter referred to as "Capron" [or the victim]), lying face down on the sidewalk complaining of multiple gunshot wounds.  The officers, in initially assessing Capron's physical condition, noted at least four bullet wounds on his lower back and legs and clothing.  In addition, they observed two shell casings and several bullet fragments.  Despite being shot, Capron was able to give the police a description of his assailant and identified him as a black male with dreadlocks, who was wearing a white tee-shirt and green shorts.  [Capron] stated that the shooting occurred at 961 Liberty

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

Avenue, and this was verified by the fact that several shell casings were found at that location. Initially, Capron was uncooperative with the police and indicated that he would take care of the matter himself and he would kill the individual who shot him.

The police put out a description of Capron's assailant and Officer [Joshua Haupt] saw an individual fitting that description[, Appellant,] walking near the Convention Center and stopped him and asked him whether or not he had a weapon on him or in his backpack. [Appellant] told the police that he had a permit to carry a concealed weapon and the police located a gun in his backpack. The police recovered a thirty-eight caliber Smith & Wesson semi-automatic which was empty since neither the magazine, nor the chamber had any live rounds. This weapon was reported stolen by its owner in June of 2018.

When Capron was initially interviewed by the police, he told them that he had just finished his four to twelve [a.m.] shift for a security company and had decided to have a couple of drinks. He went to the Images Bar since it was the only one open, despite the fact that he had no knowledge about that bar. After he was there for some time, he determined that this was a gay bar since he did not recognize anyone in the bar and that the actions and activities of the patrons indicated that this was a bar frequented by homosexuals. Eventually Capron noticed [Appellant] in the bar and while [Capron] did not know [Appellant's] name, he recognized him from living in the same neighborhood that he resided. Initially they talked and had no problem[;] however, Capron was curious as to why [Appellant] was in the bar and proceeded to ask him whether or not he was a homosexual. When Capron did not get what he perceived to be a definitive answer, he again asked [Appellant] as to his sexual orientation and asked the question at least five more times. At last call, Capron got a drink and then went outside of the bar to have a cigarette. Capron saw [Appellant] and went over to him and once again asked him whether or not he was a homosexual at which [point Appellant] appeared to become upset since he was being constantly questioned by Capron. Noticing that [Appellant] was upset, Capron asked him if he wanted to fight and indicated that this fight would be a fist fight, and in response to that question, [Appellant] drew his gun and initially pointed it to the ground and then fired a warning shot and several shots thereafter, which hit

- 2 -

Capron in the back and lower legs.[2]  In a second interview with the police, Capron stated that he had desired to buy some marijuana from [Appellant] and after making the purchase, noticed that he had not received the amount of marijuana for which he bargained, and then got into an argument with [Appellant,] at which point [Appellant] pulled a gun and shot him.

When [Appellant] was apprehended by the police he initially told [them] that he had purchased the gun off of the street for the sum of two hundred dollars and that he had nothing to do with the shooting.  [Appellant] verified the fact that Capron continuously asked him about whether or not he was a homosexual while he was in the Image[s] Bar and this continued even when they had left the bar.  At no time did Capron ever attack [Appellant] but, rather, [Appellant] became irritated with Capron about asking him the same question over and over and then fired a warning shot, and several other shots thereafter in the hopes of steering the victim away from him.

Trial Court Opinion, 9/30/21, at 3-5 (footnote added).

The Commonwealth charged Appellant with attempted homicide, aggravated assault, and receiving stolen property.  The matter proceeded to trial, at the close of which the jury found Appellant guilty of aggravated assault and not guilty of the remaining charges.  The trial court deferred sentencing for the preparation of a pre-sentence investigation report (PSI).

On June 3, 2020, the trial court sentenced Appellant to 4½ – 9 years in prison, followed by 5 years of probation.  Appellant timely filed post-sentence

---

[2] There was conflicting testimony at trial as to the number of times the victim was shot.  *See*, *e.g.*, N.T., 3/4/20, at 136 (victim testifying he suffered three gunshot wounds); *id.* at 83-86 (crime scene detective testifying there were five bullet holes in the victim's pants); *id.* at 158 (parties' stipulation that the victim was shot five times).

motions, which were denied by operation of law. Appellant timely appealed.

Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents three issues for review:

1. Whether the verdict was against the weight of the evidence to convict [Appellant] of Aggravated Assault?

2. Whether the Trial Court abused its discretion in sentencing [Appellant]?

3. Whether the evidence presented at trial was insufficient as a matter of law to sustain a conviction for Aggravated Assault?

Appellant's Brief at 3.

We first address Appellant's challenge to the sufficiency of the evidence,

mindful of the following:

When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

***Commonwealth v. Burns***, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations

omitted).

A person is guilty of aggravated assault if he "attempts to cause serious

bodily injury to another, or causes such injury intentionally, knowingly, or

recklessly under circumstances manifesting extreme indifference to the value

of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Intent to cause serious bodily

injury can be proven by wholly circumstantial evidence, and may be inferred

- 4 -

from acts or conduct, or from attendant circumstances. *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). As applied to aggravated assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To establish recklessness for purposes of aggravated assault, the Commonwealth must show that

> the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. The malice that is required for aggravated assault is the same as that required for third degree murder. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Miller*, 955 A.2d 419, 422 (Pa. Super. 2008) (citations omitted).

Appellant argues the Commonwealth failed to prove beyond a reasonable doubt that he "did not act in self-defense in discharging his firearm." Appellant's Brief at 11. Appellant claims he "fired two warning shots because he was being threatened, was being sexually harassed, and wanted Mr. Capron to leave him alone." *Id.* at 33-34. Appellant further contends the evidence, "even in the light most favorable to the Commonwealth, was insufficient to establish the elements of the crime of Aggravated Assault, even if believed by the fact finder. Specifically, [Appellant] did not attempt to cause serious bodily injury to the victim, nor did the victim sustain serious bodily

injury." *Id.*; *see also id.* at 34 ("The basis of the Aggravated Assault charge is simply that [Appellant] had a firearm and Mr. Capron was shot.").

Where a defendant employs deadly force, the elements of a claim of self-defense are that the defendant (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012); 18 Pa.C.S.A. § 505(b)(2). The Commonwealth bears the burden of disproving a claim of self-defense beyond a reasonable doubt by establishing that at least one of the three elements is absent. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012); *see also Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (Commonwealth may negate self-defense claim by proving defendant "used more force than reasonably necessary to protect against death or serious bodily injury."). However, the "finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense." *Commonwealth v. Jones*, 2021 PA Super 250, at *10 (Pa. Super. 2021).

Here, the trial court concluded the Commonwealth met its burden of disproving Appellant's self-defense claim, and proved all elements of aggravated assault beyond a reasonable doubt. The court explained:

> Since [Appellant] interjected a gun into his dispute with
> Capron, it is unquestioned that [Appellant] intended to use deadly

- 6 -

force in order to end this dispute. … [I]t is clear that [Appellant] knew that he could avoid the use of deadly force since he could have retreated with complete safety from the [unarmed victim,] since the [victim] did not possess the ability to use deadly force against [Appellant].

* * *

[Appellant] attempted to cause serious bodily injury to another individual and, knowingly and intentionally under circumstances manifesting an indifference to the value of human life, did so while he possessed a deadly weapon. While Capron may have instituted the confrontation between himself and [Appellant], Capron never introduced a deadly weapon into their difficulties. A deadly weapon was used by [Appellant] and he did so claiming that he had a right to self-defense when **he could have used non-deadly force or he could have retreated** from the scene where the shooting occurred. A review of the entire record in this case clearly demonstrates that this claim … [is] without merit.

Trial Court Opinion, 9/30/21, at 12, 14 (emphasis added). We agree.

Our review confirms the Commonwealth presented sufficient evidence to disprove Appellant's claim of self-defense. Though the victim may have provoked Appellant and challenged him to a fistfight, ***see***, ***e.g.***, N.T., 3/4/20, at 131-32, 149-50, 172, the victim was **unarmed** and posed no threat that would warrant Appellant shooting the victim multiple times (to protect himself against death or serious bodily injury). ***See id.***; ***cf. Mouzon***, ***supra*** (requirements of self-defense claim). The evidence demonstrated that Appellant became angered by the victim's questions, and responded by repeatedly firing a deadly weapon at him. ***See*** N.T., 3/4/20, at 131-34; 149-50; 172. Further, Appellant had means of retreat. ***See id.*** Thus, as the Commonwealth disproved Appellant's self-defense claim and proved all

- 7 -

elements of aggravated assault, Appellant's sufficiency claim fails. *See*, *e.g.*,

*Commonwealth v. Patterson*, 180 A.3d 1217, 1223, 1230-31 (Pa. Super.

2018) (rejecting defendant's sufficiency challenge to third-degree murder

conviction and concluding Commonwealth disproved self-defense where

defendant, after an argument and physical altercation, shot the victim despite

being able to retreat); *see also Commonwealth v. Yanoff*, 690 A.2d 260,

265 (Pa. Super. 1997).

Appellant also challenges the weight of the evidence.[3] We recognize:

> A claim alleging the verdict was against the weight of the evidence
> is addressed to the discretion of the trial court. Accordingly, an
> appellate court reviews the exercise of the trial court's discretion;
> it does not answer for itself whether the verdict was against
> the weight of the evidence. It is well settled that the jury is free
> to believe all, part, or none of the evidence and to determine the
> credibility of the witnesses, and a new trial based on a weight of
> the evidence claim is only warranted where the jury's verdict is so
> contrary to the evidence that it shocks one's sense of justice. In
> determining whether this standard has been met, appellate review
> is limited to whether the trial judge's discretion was properly
> exercised, and relief will only be granted where the facts and
> inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations

omitted).

Some of Appellant's arguments on this issue challenge sufficiency, not

weight. *See*, *e.g.*, Appellant's Brief at 16 ("testimony from Commonwealth

witnesses established only that shots were fired, and [the victim] was injured.

---

[3] Appellant preserved his weight claim in post-sentence motions. *See* Pa.R.Crim.P. 607.

Who fired those shots, with what intent, and in what direction, was completely unestablished."); *see also Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004) (explaining distinction between weight and sufficiency claims). As we have already concluded Appellant's sufficiency claim lacks merit, we do not address these arguments.

With respect to his weight claims, Appellant states that the jury's verdict was against the weight of the evidence because "[c]ontradictory testimony was presented as to how many times the victim was shot and the physical evidence recovered from the scene does not match the Commonwealth's version of events." Appellant's Brief at 10. Appellant also assails the trial court's recitation of the facts, stating it is "at odds with the trial testimony regarding the number of gunshot wounds the victim sustained and the other physical evidence presented at trial." *Id.* at 18. Appellant contends "there is still no agreement to what the evidence actually is, and the evidence presented is so tenuous, vague, and definitely uncertain that the jury's verdict should shock the conscience of the court." *Id.* at 19. Appellant's argument is unavailing.

The Pennsylvania Supreme Court has explained:

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." *Commonwealth v. Sanchez*, ... 36 A.3d 24, 27 ([Pa.] 2011) (citation omitted). A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. *See Commonwealth v. Rivera*, ... 983 A.2d 1211, 1220 ([Pa.] 2009) (stating that "the trier of fact, in

passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence") (citation omitted).

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017).

Upon review, we conclude the trial court did not abuse its discretion in finding "there is nothing about the evidence in this case that shocked this Court's consci[ence.]" Trial Court Opinion, 9/30/21, at 8. The court correctly determined: "The question of how many shots were fired was one meant for the jury[;] however, it is clear from the testimony and the physical facts that more than one shot was fired." *Id.* at 7; *see also id.* ("The physical evidence … obviously demonstrates that more than one shot was fired since [the victim] suffered multiple gunshot wounds and the City police observed four gunshot wounds at the time that they encountered him," and "there were bullet fragments in [the victim's] body which were not removed."). Further, and as the Commonwealth observes, the number of times the victim was shot "has no real bearing on the question of whether [Appellant] committed an aggravated assault." Commonwealth Brief at 22, n.13. Accordingly, Appellant's weight claim fails. *See*, *e.g.*, *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003) ("A verdict is not contrary to the weight of the evidence because of a conflict in testimony"); *Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa. Super. 2016) (rejecting defendant's weight claim and explaining that credibility and conflicts in evidence are for the fact-finder to resolve; a reviewing Court may not disturb these findings).

Finally, Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*). Where the appellant has preserved the challenge by raising it in a post-sentence motion and filing a timely appeal, he must (1) include in his brief a statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Hill***, 66 A.3d 359, 363-64 (Pa. Super. 2013); ***see also*** 42 Pa.C.S.A. § 9781(b).

Appellant's brief contains a Rule 2119(f) statement. Appellant's Brief at 12-14. Appellant argues the court imposed a manifestly excessive and unreasonable sentence "without due or meaningful consideration of the statutory factors of 42 Pa.C.S. § 9721(b) and 42 Pa.C.S. § 9781(d)." ***Id.*** at 13; ***see also id.*** at 14 (claiming court improperly "fashioned a sentence that only reflected the seriousness of the crime"). Accordingly, Appellant presents a substantial question. ***See Commonwealth v. Derry***, 150 A.3d 987, 992 (Pa. Super. 2016) (substantial question raised where appellant claimed the court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [a]ppellant, as 42 Pa.C.S. § 9721(b) requires" (citation omitted)); ***Commonwealth v. Knox***, 165 A.3d 925, 929-30 (Pa. Super. 2017) ("A claim

that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances … raises a substantial question.").

We address the merits of Appellant's sentencing claim mindful of our standard of review: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Moye*, 266 A.3d 666, 676 (Pa. Super. 2021) (citation omitted). The Sentencing Code provides that a sentencing court,

> shall follow the general principle that the sentence imposed should call for confinement that is consistent with … the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). The court must also consider the sentencing guidelines. *Id.* Although a court need not undertake a lengthy discourse for its reasons for imposing a sentence, the record as a whole must reflect the court's consideration of the facts of the crime and character of the offender. *Commonwealth v. Flowers*, 149 A.3d 867, 876 (Pa. Super. 2016).

Appellant's sentence for aggravated assault falls within the standard range of the guidelines. *See* 204 Pa. Code § 303.16(a) (sentencing matrix). Therefore, we may only vacate his sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2).

Importantly, the sentencing court had the benefit of and considered Appellant's PSI. *See* N.T., 6/3/20, at 20-21 ("I have reviewed the guidelines and the Presentence Report and I do recall the facts of your case."); *see also* Trial Court Opinion, 9/30/21, at 9-10. Where a court "is informed by a pre-sentence report, **it is presumed that the court is aware of all appropriate sentencing factors and considerations**, and "where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (emphasis added) (discussing *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)).

After review, we discern no abuse of discretion in the standard-range sentence the court imposed following Appellant's conviction of aggravated assault, which is neither excessive nor unreasonable.[4] *See Ventura*, *supra*; *see also Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) ("where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.").

Judgment of sentence affirmed.

---

[4] Further, we reject Appellant's claim that the aforementioned presumption in *Ventura*, *supra*, when the court has reviewed a PSI, "is expressly rebutted in the instant case, as the sentencing court's statements confirm the single-minded focus on the seriousness of the crime." Appellant's Brief at 23-24. The record demonstrates the sentencing court considered the seriousness of the crime as one of several relevant factors.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/29/2022